*Mark Phillip French v. State of Maryland*
Case No. 2386 September Term, 2018
  Consolidated No. 488 September Term, 2013
Opinion by Meredith, J.


**CRIMINAL LAW – CRIMINAL PROCEDURE – WRIT OF ACTUAL INNOCENCE – STANDARD FOR REVIEW OF PETITION BASED UPON PERJURY COMMITTED BY PROSECUTION'S BALLISTICS EXPERT WITNESS.** In accordance with the procedure announced by the Court of Appeals in *McGhie v. State*, 449 Md. 494 (2016), the circuit court, considering petitioner's request that he be granted a new trial because the prosecution's ballistics expert witness testified falsely about his professional qualifications, analyzed the impact of the false testimony on the trial at which the petitioner was convicted. The hearing judge assumed that the jury would have disregarded the expert's testimony in its entirety, as well as that of any other witness whose testimony was based upon, or bolstered by, the testimony of the ballistics witness. After excising the testimony of the ballistics expert and the testimony of other witnesses that followed from the expert's testimony, the hearing judge considered the remaining evidence and concluded that the petitioner had not shown that there was a substantial possibility that the result of his trial may have been different if the jurors had known of the expert's false testimony. On appeal, we review the conclusions of the hearing judge for abuse of discretion.

**CRIMINAL LAW – CRIMINAL PROCEDURE – WRIT OF ACTUAL INNOCENCE – STANDARD FOR REVIEW OF PETITION BASED UPON PERJURY COMMITTED BY PROSECUTION'S BALLISTICS EXPERT WITNESS – NO SUPPRESSION OF EVIDENCE BY PROSECUTION.** If the State suppresses evidence that is favorable to the defendant, and that suppression causes prejudice, then that suppression violates the due process rights of the defendant, as recognized in *Brady v. Maryland*, 373 U.S. 83 (1963), and the reviewing court considers whether there is any reasonable likelihood that the false testimony affected the judgment of the jury. But, as explained in *Yearby v. State*, 414 Md. 708 (2010), there can be no *Brady* violation where there is no suppression of evidence by the State.

Circuit Court for Baltimore County
Case No. 03-K-93-4253

REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 2386
September Term, 2018

CONSOLIDATED WITH

No. 488
September Term, 2013

---

MARK PHILLIP FRENCH

v.

STATE OF MARYLAND

---

Meredith,
Berger,
Wells,

JJ.

---

Opinion by Meredith, J.

---

Filed: October 31, 2019

Pursuant to Maryland Uniform Electronic Legal
Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Suzanne C. Johnson, Clerk

Mark French, appellant, appeals from the denial of his petition for a writ of actual innocence, in which he sought a new trial pursuant to Maryland Code (2001, 2018 Repl. Vol.), Criminal Procedure Article ("CP"), § 8-301, having been convicted by a jury in April 1994 of attempted first degree murder, robbery with a dangerous weapon, and two counts of a use of a handgun in the commission of a crime of violence. Mr. French contends the Circuit Court for Baltimore County erred in denying his petition that asserted his convictions were based upon the perjured testimony of the State's ballistics expert, Joseph Kopera, who testified falsely regarding his academic credentials.

## QUESTIONS PRESENTED

Mr. French presents the following questions for our consideration, which we have reordered, consolidated, and rephrased:[1]

---

[1] Mr. French's unedited questions presented read as follows:

1) Did the lower court err by not granting appellant relief due to the fact that the trial court relied on the testimony of Joseph Kopera when ruling on the admission of other crimes evidence, making that evidence now improperly admitted?

2) Did the lower court err by not granting relief due to the fact the State relied solely on the testimony of Joseph Kopera to prove a handgun was used to shoot the victim?

3) Did the lower court err by using the conflicting testimony of Lisa Morton to deny relief?

4) Did the lower court err when ruling that Joseph Kopera's testimony did not affect Lisa Morton's credibility?

5) Did the lower court err by using the wrong legal standard for reviewing a case with perjured testimony by a state agent?

1. Did the circuit court use the incorrect legal standard for reviewing a case in which a state agent had given perjured testimony?

2. Did the circuit court abuse its discretion when it found that, even if it struck all of Joseph Kopera's testimony, and all related testimony of other witnesses, there was still not a substantial possibility that the outcome of Mr. French's trial may have been different?

For the reasons set forth herein, we shall affirm the decision of the circuit court.

## FACTUAL AND PROCEDURAL BACKGROUND

Over twenty years ago, Mr. French was charged with committing an armed robbery of Brian Sherry and the attempted murder of Baltimore County Police Officer Joseph Beck on October 31, 1993. On April 13, 1994, following a three-day jury trial in the Circuit Court for Baltimore County, Mr. French was convicted of attempted first degree murder, robbery with a dangerous weapon, and two counts of use of a handgun in the commission of a crime of violence. He was sentenced to life imprisonment for attempted first degree murder, plus a total of 35 years for the other convictions. On direct appeal, we affirmed Mr. French's convictions in an unreported opinion. *French v. State*, No. 1277, September Term, 1994 (filed March 28, 1995).

On July 24, 2012, Mr. French filed a motion for a new trial asserting various claims related to the testimony given by Joseph Kopera at the 1994 trial. Because the relief was requested pursuant to CP § 8-301, the circuit court treated Mr. French's motion for a new trial as a petition for writ of actual innocence. On May 3, 2013, the circuit court held a hearing and denied Mr. French's petition. Mr. French noted an appeal to this Court, which was docketed as No. 488, September Term, 2013.

2

In October 2016, Mr. French, through counsel, filed a motion in this Court asking us to remand his case to the Circuit Court for Baltimore County for reconsideration in light of the Court of Appeals's opinion that was filed on August 24, 2016, in *McGhie v. State*, 449 Md. 494 (2016). On November 22, 2016, we granted the motion, remanded the case without affirmance or reversal, and stayed the appeal in No. 488, September Term, 2013, to permit Mr. French to petition the circuit court to reconsider its denial of his actual innocence petition in light of the Court of Appeals's intervening decision in *McGhie*.

In *McGhie*, the Court of Appeals announced the appropriate analysis for reviewing a petition for writ of actual innocence in a case in which a petitioner contended that he was entitled to a new trial because newly discovered evidence of Mr. Kopera's false testimony about his academic credentials created a substantial or significant possibility that the result of McGhie's trial may have been different. Although the parties in *McGhie* agreed the "substantial or significant possibility" standard "falls between 'probable,' which is less demanding than 'beyond a reasonable doubt,' and 'might' which is less stringent than probable[,]" the parties disagreed as to the analyses courts should employ in applying that standard to a case such as McGhie's. *Id.* at 510.

The State argued in *McGhie* that the circuit court judge hearing the petition for writ of actual innocence, and any reviewing court, should take a "prospective" approach; in other words, the court should "hypothesize whether a *new* trial without the expert witness's perjured testimony would result in a verdict different from that reached at the actual trial." 449 Md. at 510 (emphasis in original). McGhie argued that the hearing

3

judge considering a petition for writ of actual innocence, and any reviewing court, should take a "retrospective approach that considers the impact of the newly discovered evidence at the trial" at which the petitioner was convicted. *Id.* The Court of Appeals examined the plain language of CP § 8-301(a)(1) and determined that the General Assembly's word choice, using the past tense, requires courts to take a retrospective approach. In considering this issue, the Court of Appeals also drew guidance from its prior decision in *State v. Hunt*, 443 Md. 238, 264 (2015), where the Court explained: "[T]he Circuit Court must determine whether the new evidence regarding Kopera creates a substantial or significant possibility that the result of their trials may have been different." *McGhie*, 449 Md. at 511.

The parties in *McGhie* further disagreed about the manner in which the hearing judge should apply the "retrospective approach." The State asserted that the hearing judge "need only excise the false testimony and then determine from the remaining evidence whether there is a substantial or significant possibility that the result at trial may have been different." *Id.* But McGhie asserted that the hearing judge must decide whether, "*had the jurors been aware of the falsehood*, there is a substantial or significant possibility that the result of the trial may have been different." *Id*. at 511 (emphasis added). The Court of Appeals agreed with McGhie's argument and held:

> The appropriate analysis is not simply to excise the falsehood, for such an approach, as applied to this case, ignores the "substantial or significant possibility" that one or more of the jurors at Petitioner's trial, had they known of Kopera's false testimony about his credentials, would have discredited his testimony in its entirety.

*Id.* (footnote omitted).

4

The closing paragraphs of the majority opinion in *McGhie* provided this instructive summary regarding the proper analysis of a petition for a writ of actual innocence based upon the false testimony of Mr. Kopera:

> It is important to note that the hearing judge made no mention of the three witnesses who testified that Petitioner shot a gun in an unrelated incident on January 23, 1994. We assume that the hearing judge understood that the testimony of those lay witnesses had to be discounted, along with Kopera's ballistics testimony, as the jury would not have heard the testimony of the lay witnesses save for Kopera's testimony linking that gun to the crime at issue. The hearing judge correctly eliminated that lay witness testimony from his analysis.
>
> **We discern no legal error** or abuse of discretion **on the part of the hearing judge in properly analyzing the petition by recognizing the reasonable possibility that the jury, aware of Kopera's lies about his academic credentials, would have discounted his testimony on the merits, as well as the lay witness testimony that followed from it**. Neither did the hearing judge abuse his discretion in ruling, in the end, that, given the weight of the evidence presented against him at trial, **Petitioner was unable to prove that Kopera's lies "create[d] a substantial or significant possibility that the result may have been different."** . . .

*Id.* at 514 (emphasis added).

Pursuant to this Court's remand to reconsider Mr. French's actual innocence petition in light of *McGhie*, the Circuit Court for Baltimore County held a new hearing on May 21, 2018. On August 10, 2018, the circuit court denied Mr. French's petition in a written opinion and order. The circuit court's opinion set out the pertinent facts that were presented at Mr. French's trial as follows:

### I. Petitioner's Trial

> In 1993, Petitioner was charged with Attempted First Degree Murder, Robbery with a Dangerous and Deadly Weapon, two (2) counts of Use of a Handgun in the Commission of a Felony, Burglary (general), and Burglary (breaking and entering at common law).[4] [Footnote 4 in the

circuit court's opinion appeared at this point and stated: The counts as charged were as follows: Count One (1) - Attempted First Degree Murder; Count Two (2) - Handgun Use in the Commission of a Felony; Count Three (3) - Robbery with a Dangerous and Deadly Weapon; Count Four (4) - Handgun Use in the Commission of a Felony; Count Five (5) - Burglary (generally); Count Six (6) - Burglary (breaking and entering at common law).] Petitioner's jury trial before the Honorable James T. Smith, Jr. began on April 11, 1994, at which time Petitioner successfully moved pre-trial to sever the two (2) burglary counts from the other offenses charged. (Tr., Trial, April 11, 1994, p. 21). The trial concluded on April 13, 1994, when Petitioner was found guilty and convicted of First Degree Attempted Murder, Robbery with a Dangerous and Deadly Weapon, and both counts of Use of a Handgun in the Commission of a Felony. Petitioner subsequently accepted the State's offer to place the severed burglary charges on a stet docket. At the request of Petitioner's counsel, Judge Smith ordered a Presentence Investigation and held Petitioner's disposition *sub curia*.

On May 25, 1994, Judge Smith sentenced Petitioner to the following: Life on the charge of Attempted First Degree Murder; ten (10) years on the charge of Robbery with a Dangerous & Deadly Weapon, to run consecutive to Petitioner's life sentence; twenty (20) years, the first five (5) to be served without the possibility of parole, on one count of Use of Handgun in the Commission of a Felony, to run consecutive to Petitioner's life sentence; and five (5) years, to be served without the possibility of parole, on the remaining charge of Use of Handgun in the Commission of a Felony.

## II.    Joseph Kopera's "Expert" Testimony

In 2007, the Innocence Project began investigating inconsistencies in Joseph Kopera's testimony regarding his academic credentials. *State v. Hunt*, 443 Md. 238, 253 (2015). A subsequent audit confirmed that, contrary to his testimony, Kopera had not earned degrees from either Rochester Institute of Technology or the University of Maryland, despite providing a forged transcript from the latter. *McGhie v. State*, 449 Md. 494, 505 (2016). Kopera was further unable to verify his testimony stating he had graduated from the F.B.I. academy in the field of firearms identifications and gunpowder residues. *Id.*

### III. *McGhie v. State*

The revelation of Kopera's fraudulent credentials resulted in multiple cases considering whether Kopera's perjury constituted newly discovered evidence.[5] [Footnote 5 in the circuit court's opinion appeared at this point and stated: *See generally Hunt*, 443 Md. 238 (2015); *Jackson v. State*, 216 Md. App. 347 (2014); *Kulbicki v. State*, 207 Md. App. 412 (2012), *rev'd on other grounds*, 440 Md. 33 (2014), *rev'd,* 136 S.Ct. 2 (2015); *Douglas v. State*, 423 Md. 156 (2011) (addressing whether Kopera's perjured expert qualifications constituted newly discovered evidence within the meaning of the statute).] This issue was decided in 2016 when the Court of Appeals issued their decision in *McGhie v. State*. *McGhie* holds that, in considering whether Kopera's disqualification constitutes newly discovered evidence, the trial judge must consider "the reasonable possibility that the jury, aware of Kopera's lies about his academic credentials, would have discounted his testimony on the merits, as well as the lay witness testimony that followed from it." 449 Md. at 514. If excising Kopera's testimony and the reliant lay witness testimony "create[s] a substantial or significant possibility that the result may have been different," the petitioner is entitled to relief under the Writ of Actual Innocence statute. *Id. See* [CP § 8-301].

\* \* \*

At [Mr. French's] trial, Kopera testified as to his expert credentials that he was a graduate of the FBI academy, the University of Maryland, and the Rochester Institute of Technology.[10] [Footnote 10 in the circuit court's opinion appeared at this point and stated: These credentials were later discovered to be perjured and are indicative of the rationale in *McGhie*.] (Tr., Trial, April 12, 1994, p. 193). As to the substance of Petitioner's case, Kopera testified that a gun and the bullets fired are comparably identified like fingerprints in their individuality and ability to be matched. (Tr., Trial, April 12, 1994, p. 197-98). **Ultimately, Kopera opined that the nine (9) millimeter bullets found at the scene of the shooting and removed from the victim's body matched the handgun found at the scene of Petitioner's arrest.** (Tr., Trial, April 12, 1994, p. 200-201).

#### a. Lisa Morton's testimony

Lisa Morton's testimony included knowledge that Petitioner had three guns, including a nine (9) millimeter handgun. (Tr., Trial, April 12, 1994, p. 59). She also asked Petitioner if he had shot a police officer and

[she] testified that she heard Petitioner respond "it was me or him." (Tr., Trial, April 12, 1994, 63, 77, 85). Ms. Morton testified that Petitioner would come to her home, [redacted] Street, in order to use drugs with others, including Petitioner's girlfriend Heather Kendall. (Tr., Trial, April 12, 1994, p. 69-70). When Petitioner arrived at her home on the night of the shooting, Ms. Morton testified Petitioner saw a police sketch on the news that resembled Ms. Kendall. (Tr., Trial, April 12, 1994, p. 63). Petitioner asked Ms. Morton if it resembled Ms. Kendall, and when Ms. Morton asked if Petitioner was involved, Petitioner stated "it was either me or him." (Tr., Trial, April 12, 1994, p. 63, 77, 85). Petitioner was subsequently arrested at Ms. Morton's home, at which time the property was searched and revealed multiple guns. Ms. Morton testified that she had never seen these guns in her home prior to Petitioner's arrest. (Tr., Trial, April 12, 1994, p. 68).

* * *

### b. Additional lay witness testimony

#### i. Circumstantial identification of Petitioner

The State presented additional evidence at trial, specifically in the form of witness testimony.[11] [Footnote 11 in the circuit court's opinion appeared at this point and stated: Including Kopera, the State called nineteen (19) witnesses at trial.] Petitioner argues that Kopera, as the State's "star witness," bolstered all witness testimony. Moreover, Petitioner claims because he was never conclusively identified as the shooter, all other circumstantial lay witness testimony was corroborated by Kopera's expert opinion. At the hearing on the Writ of Actual Innocence, the State conceded that Petitioner was never identified, but argued Petitioner's conviction was supported not only by Petitioner's confession to Lisa Morton, but also by positive identification of other involved parties. Specifically, the State argued that even if Kopera's testimony were removed, there was sufficient evidence to support Petitioner's conviction.

At trial, the State called three witnesses who, while not able to positively identify Petitioner, were able to identify a white male driving a car and subsequently pointing a gun. Brian Sherry stated he got a "semi-good look at [Petitioner]" and described him as having black hair, but was concentrating on the gun being pointed at him. (Tr., Trial, April 11, 1994, p. 170). Sandra Lowery, the ride-along of the victim police officer, testified that she saw the suspect truck driven by a white male with dark hair and later saw his face as he turned out of the window with a gun. (Tr.,

Trial, April 11, 1994, p. 194, 198). Officer Beck, the victim of the shooting, testified he stopped a vehicle matching the description of the one used in the burglary, saw a white male driving with a female passenger. (Tr., Trial, April 11, 1994, p. 205-206).

* * *

### ii. Physical evidence at trial

In addition to lay witness testimony, the State presented physical evidence at trial, including but not limited to fingerprints lifted from Petitioner's truck and bullets in Petitioner's pocket at the time of his arrest. . . .

At trial, Marion Suggs[12] testified that following the time of the shooting, Petitioner stated in a conversation with Ms. Suggs that his employee Bill Martin[13] had his truck and had shot a police officer when Mr. Martin was pulled over. [Footnote 12 in the circuit court's opinion appeared at this point and stated: Marion Suggs is the Petitioner's former wife.] [Footnote 13 in the circuit court's opinion appeared at this point and stated: When called to testify, Mr. Martin testified that he never took Petitioner's truck home and that it was rare for him to drive the truck (rather than Petitioner). (Tr., Trial, April 12, 1994, p. 170, 174).] (Tr., Trial, April 12, 1994, p. 44-45). Subsequently, Ms. Suggs testified Petitioner later called her crying, asked Ms. Suggs to sell everything, and said he was leaving town. (Tr., Trial, April 12, 1994, p. 47, 50). Detective Lingerer testified several sets of fingerprints were lifted from the truck. (Tr., Trial, April 12, 1994, p. 178). As an expert in fingerprint identification, Tim Ostendarp testified that of the 2-5 sets of latent fingerprints examined, latent prints on the truck matched those of Petitioner and Heather Kendall. (Tr. Trial, April 12, 1994, p. 186-88). Petitioner claimed at the Writ of Actual Innocence hearing that in calling Ms. Suggs, he was only attempting to help Ms. Kendall, his on and off girlfriend. The State argued that by placing this phone call, Ms. Sugg[s]'s testimony showed Petitioner's consciousness of guilt, subsequently supported by Petitioner and Ms. Kendall's placement in the truck used at the time of the shooting.

* * *

9

### *iii. Defense theory at trial*

This Court would note that at Petitioner's trial, the defense did not attempt to use evidence to exculpate the Petitioner, but rather to inculpate Mr. Martin and Ms. Kendall, two individuals with whom the Petitioner was involved. Ms. Kendall was not called as a witness in either the State or Petitioner's case. The State called Mr. Martin, who was then subject to thorough cross examination by Petitioner's trial counsel. (Tr. Trial, April 12, 1994, p. 167-74). Petitioner's counsel reiterated this strategy in opening arguments, throughout trial, and in closing. In evaluating the weight of the evidence supporting Petitioner's conviction, this Court would note that at no point during trial was argument made that testimony or physical evidence specifically exculpated the Petitioner.

(Emphasis added.) The circuit court's opinion reviewed the parties' arguments and concluded:

Petitioner alleges the excision of Kopera's testimony and the corroborated portions of lay witness testimony pursuant to *McGhie* creates a substantial possibility that the jury would have discredited Lisa Morton's testimony and found Petitioner not guilty. At the hearing before this Court, the State argued that Kopera's testimony was minimal in its contribution to Petitioner's conviction. The State also highlighted and argued that the removal of Kopera's testimony would not outweigh the substantial additional evidence supporting Petitioner's conviction.

\* \* \*

After reviewing the trial transcript, considering Ms. Morton's testimony and argument made at the Writ of Actual Innocence hearing, and considering relevant case law, this Court finds that Petitioner's allegation that Kopera's testimony substantially bolstered Ms. Morton's credibility and Petitioner's overall conviction to be meritless. *McGhie* requires that all Kopera-corroborated testimony not be considered. At trial, Ms. Morton testified that Petitioner's response to shooting a police officer was "it was either me or him." As to Ms. Morton's credibility on the issue of drug use, Petitioner's trial counsel had a full opportunity to attack Ms. Morton's credibility. This Court does not find that the nature of Ms. Morton's testimony was substantially supported or bolstered by Kopera. Although the nature of Kopera's perjury is newly discovered evidence that could not have been discovered within the time to move for a new trial, this Court finds that *McGhie* does not require excision of Ms. Morton's testimony

10

about Petitioner's confession and therefore does not create a substantial possibility that the outcome of Petitioner's trial may have been different.

\* \* \*

After reviewing the trial transcript, considering the testimony and argument made at the Writ of Actual Innocence hearing, and considering the relevant case law, this Court finds that Petitioner's allegation that Kopera's perjury at the time of trial may have created a substantially different outcome is meritless. In reviewing the transcript, it is clear that Petitioner's conviction was supported by ample witness testimony as well as physical evidence. **Pursuant to *McGhie*, excising Kopera's testimony and all witness testimony bolstered by Kopera's findings that could be considered to support Petitioner's conviction supports this Court's finding that the Petitioner does not meet his burden as required by Section 8-301 of Maryland's Criminal Procedure Article. Although Kopera's perjury is newly discovered evidence that could not have been discovered within the time to move for a new trial, this Court finds that the removal of Kopera's testimony and all related testimony does not create a substantial possibility that the outcome of Petitioner's trial may have been different.**

(Emphasis added.)

Acting on his own behalf, Mr. French filed a motion in the circuit court to alter or amend the circuit court's ruling denying his actual innocence petition. On August 24, 2018, the circuit court denied his motion to alter or amend. On September 10, 2018, Mr. French, acting on his own behalf, filed a timely appeal of the circuit court's denial of his petition for writ of actual innocence, which was docketed as No. 2386, September Term, 2018. Later in September 2018, counsel for Mr. French filed a motion for appropriate relief requesting that we proceed with the previously-stayed appeal, No. 488, because the circuit court had issued its opinion again denying Mr. French's petition for writ of actual innocence. In January 2019, we granted counsel's motion for appropriate relief and

11

consolidated the appeal Mr. French had filed (No. 2386) with the appeal that had been filed prior to the *McGhie* decision (No. 488).

## STANDARD OF REVIEW

We review for abuse of discretion the circuit court's denial on the merits of an actual innocence petition, provided that, as here, a hearing was held on the petition. *McGhie v. State*, 449 Md. 494, 509 (2016); *State v. Hunt*, 443 Md. 238, 247-48 (2015); *Ward v. State*, 221 Md. App. 146, 156 (2015).

## DISCUSSION

**1.    The circuit court applied the correct legal standard**

The circuit court properly conducted the analysis required by *McGhie.* First, the circuit court found, "[i]n accordance with *McGhie* . . . 'the evidence of Kopera's lies about his academic credentials was "newly discovered"' evidence[.]'' Next, the circuit court found that Mr. Kopera's perjury could not have been discovered within the time prescribed in Maryland Rule 4-331. The circuit court then examined the question of whether this newly discovered evidence created a substantial possibility that the outcome of Mr. French's trial may have been different if the falsity of Kopera's testimony had been known by the jurors at the time of trial. This analysis complied with the required procedure set forth in *McGhie*.

But Mr. French asserts the circuit court erred in using the "substantial possibility" standard. Mr. French contends that, "in cases such as this where a State agent is found to have testified falsely, the standard of review is stricter than the standard applied by the lower court[.]" Relying on *Yearby v. State*, 414 Md. 708, 717 n.5 (2010), Mr. French

12

contends the appropriate legal standard requires a new trial where there is "*any reasonable likelihood* that the evidence affected the judgment of the jury." (Emphasis in original.)

In *Yearby*, the Court of Appeals addressed whether the State had committed a "*Brady* violation," 414 Md. at 711, and observed: "The Supreme Court held in *Brady v. Maryland,* 373 U.S. 83, 87, 83 S. Ct. 1194, 1196-97, 10 L.Ed.2d 215, 218 (1963), that 'the *suppression by the prosecution of evidence favorable to an accused* upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.'" *Id.* at 716 (emphasis added). In *Yearby*, the Court recognized that cases decided subsequent to *Brady* have "reliev[ed] the accused of the burden of making a request" for the favorable information when the evidence is highly probative of innocence. *Id.* "There are three components of a true *Brady* violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; *that evidence must have been suppressed by the State*, either willfully or inadvertently; and prejudice must have ensued." *Id.* at 717 (emphasis added) (citations omitted). "There can be no *Brady* violation where there is no suppression of evidence." *Id.* at 725-26 (citations and quotation marks omitted).

The *Yearby* Court, in analyzing a *Brady* claim, explained that, where "the facts demonstrate that the prosecution's case included perjured testimony *and that the prosecution knew or should have known of the perjury*" (emphasis added), a new trial is

13

required if the false testimony could "*in any reasonable likelihood have affected the judgment of the jury.*" *Id.* at 717 n.5 (emphasis in original) (citations omitted).

But here, there was no evidence that the State knew or should have known at the time of Mr. French's trial that Mr. Kopera was giving false testimony regarding his qualifications as a ballistics expert. Indeed, the circuit court noted that Mr. French himself "alleges that the newly discovered evidence of Kopera's fraudulent testimony could not have been discovered in time for him to move for a new trial [pursuant to Maryland Rule 4-331]." The circuit court agreed with Mr. French on this point because, it said, "the investigation and revelation into Kopera's credentials was not until 2007." *Cf. Maryland v. Kulbicki*, ___ U.S. ___, 136 S.Ct. 2, 4 (2015) (observing, with respect to comparative bullet lead analysis testimony that had been discredited subsequent to Kulbicki's trial, "we have 'adopted the rule of contemporary assessment of counsel's conduct,'" quoting *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993)). Mr. French presented no evidence that the State knew or should have known at the time of his trial in 1994 that Mr. Kopera was misrepresenting his professional background. Consequently, we conclude that the stricter standard of review applicable to a *Brady* violation does not apply, and the circuit court applied the correct legal standard as set forth in *McGhie*.

## 2. The merits of the circuit court's decision

In accordance with *McGhie*, the circuit court recognized "the reasonable possibility that the jury, [if it had been] aware of Kopera's lies about his academic credentials, would have discounted his testimony on the merits, as well as the lay witness testimony that followed from it." 449 Md. at 514.

14

## A. Lisa Morton's testimony

In the circuit court, Mr. French argued that "Kopera's testimony corroborated and supported lay witness testimony of Lisa Morton." Mr. French "allege[d] that the jury would not have believed Ms. Morton absent Kopera's testimony corroborating the gun found in Ms. Morton's home at the time of [Mr. French's] arrest with the gun Kopera opined matched the bullets found from the shooting."

The circuit court reached the following conclusion regarding the effect of Mr. Kopera's testimony upon Ms. Morton's credibility:

> When Petitioner arrived at [Ms. Morton's] home on the night of the shooting, Ms. Morton testified[,] Petitioner saw a police sketch on the news that resembled Ms. Kendall, and when Ms. Morton asked if Petitioner was involved, Petitioner stated "it was either me or him." (Tr., Trial, April 12, 1994, p. 63, 77, 85). . . . At trial, Ms. Morton testified that Petitioner's response to shooting a police officer was "it was either me or him." As to Ms. Morton's credibility on the issue of drug use, Petitioner's trial counsel had a full opportunity to attack Ms. Morton's credibility. This court does not find that the nature of Ms. Morton's testimony was substantially supported or bolstered by Kopera.

Mr. French asks us to accept his argument regarding the weight the jury would have given Ms. Morton's testimony had the jury known of Mr. Kopera's lies about his credentials. This argument, in essence, asks us to find that the hearing judge abused her discretion in evaluating the impact the newly discovered evidence would have had if known at the time of the jury trial. We conclude that the circuit court did not abuse its discretion in finding that *McGhie* does not require excision of Ms. Morton's testimony about Mr. French's confession to her of shooting a police officer ("it was either me or

15

him"). That testimony purported to be based upon her personal knowledge and did not flow from Mr. Kopera's ballistics testimony about one of the guns found in her house.

## B. The remaining evidence

In denying Mr. French's actual innocence petition, the circuit court considered only the remaining evidence it deemed untainted by, and not bolstered by, Mr. Kopera's testimony. That evidence included the testimony of three witnesses who saw a suspect holding a gun; physical evidence of Mr. French's fingerprints lifted from a truck like the one used in the shooting; and the testimony of Marion Suggs.

We note that the circuit court explained that, as a consequence of Mr. Kopera's perjury, it would not consider all of the incriminating evidence about guns:

> There was substantial evidence presented at trial regarding the bullets found in Petitioner's pocket and the gun found in close proximity to Petitioner at the time of his arrest. Additionally, there was evidence to suggest that the guns stolen in the burglary were those used in the shooting of Officer Beck. However, pursuant to *McGhie*, this Court in fundamental fairness to the Petitioner will not consider the proximity or location of the guns in light of Kopera's testimony. . . .

The circuit court reached the following conclusion regarding the effect of Mr. Kopera's expert testimony about the gun upon the circumstantial identification of Mr. French:

> After reviewing the trial transcript, the arguments made at the Writ of Actual Innocence hearing, and considering relevant case law, this Court finds that Petitioner's allegation that circumstantial witness identification was supported by Kopera's testimony to be without merit. All lay witness testimony presented described Petitioner's appearance, his presence in a vehicle matching a vehicle used in a burglary, and the presence of a female passenger. Although several identifying witnesses mentioned seeing a gun, this Court is not persuaded that Kopera's expert [ballistics] testimony regarding the identification of the gun is in any way relevant to Petitioner's

16

positive identification. While Kopera's perjury is newly discovered evidence that could not have been discovered within the time to move for a new trial, this Court finds that it has no bearing on the witness testimony, therefore not requiring removal, and not creating a substantial possibility that the outcome of the Petitioner's trial may have been different.

We discern no abuse of discretion in the circuit court's finding.

Mr. French also contends that the circuit court erred by relying upon Ms. Morton's testimony in support of the circuit court's decision to deny his petition for writ of actual innocence because, he asserts, it was "in conflict" with the testimony of another witness, namely, Marion Suggs. Mr. French argues that the circuit court should not have accepted Ms. Morton's testimony that Mr. French told her "it was me or him" over what Marion Suggs had testified. He states in his brief:

> Ms. Morton's testimony was in conflict with that of Ms. Suggs. As a result, the court below could not assess the credibility of the two witnesses and rule in favor of one. The lower court was not the trier of fact and did not have the opportunity to judge the credibility of the witness. It could not make a determination as to who was credible from a cold transcript.
>
> Ms. Morton's testimony was impeached at trial. The jury was told she sold and used drugs. They were told she could have been lying to get a reward that was offered.

(Citations omitted.)

Ms. Suggs had testified that, after the shooting, Mr. French called her and told her it was William Martin who had shot a police officer while using Mr. French's truck. According to Mr. French, the discrepancies in the accounts of these two witnesses precluded the hearing judge from giving weight to the incriminating testimony of Ms. Morton.

17

The circuit court's opinion demonstrates that it did not deny Mr. French's petition based solely on Ms. Morton's testimony that Mr. French told her, "it was me or him," nor did it elevate Ms. Morton's testimony over that of Ms. Suggs. It appears to us that the circuit court placed substantial weight upon the testimony of Ms. Suggs. The jury heard Ms. Suggs testify that Mr. French "called her on the telephone and he [was] crying, he [was] upset, and he [was] panicking. He [said], [']Marion, sell everything in my house, split the money with my mother, I'm leaving town.[']" Mr. French asserted that he told Ms. Suggs all of this in an effort to help Ms. Kendall, his on-and-off girlfriend, who had been implicated as being involved in helping commit the underlying crimes. The State argued, however, that it showed Mr. French's consciousness of guilt and supported the State's argument that Ms. Kendall was present in the truck that was used at the time of the shooting. The circuit court concluded that Ms. Suggs's testimony about Mr. French's incriminating statements and behavior were totally independent of, and not bolstered by, Mr. Kopera's testimony. The circuit court also viewed Ms. Suggs's testimony as supportive of the State's argument that "Mr. Kopera's testimony was minimal in its contribution to Petitioner's conviction." We perceive no abuse of discretion in this ruling, or in the hearing judge's assessment of the evidence.

## CONCLUSION

*McGhie* stands for the proposition that the fact that Mr. Kopera testified falsely about his qualifications does not require the judge hearing a petition for a writ of actual innocence to automatically grant a new trial as a matter of law. Rather, it is up to the court considering the petition to assess the impact of the false testimony upon the trial at

18

which the petitioner was convicted. As stated previously, the decision on the merits of an actual innocence petition, where a hearing was held, is committed to the circuit court's discretion. *McGhie*, 449 Md. at 509; *Hunt*, 443 Md. at 247-48*; Ward*, 221 Md. App. at 156. Given the other evidence that was introduced against Mr. French, which the hearing judge evaluated after it was completely sanitized of Mr. Kopera's testimony and any bolstering impact of his testimony, we do not discern any abuse of discretion in the circuit court's analysis of the case or its conclusion that he had not met his burden of persuading the court that there is a substantial possibility the outcome of his trial may have been different had he known in 1994 that Mr. Kopera testified falsely about his qualifications.

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE COUNTY AFFIRMED. COSTS TO BE PAID BY APPELLANT.**

19